AHMAD BEN NAMA and            )
KAHLED ABED,                  )
                             )
        Plaintiffs/Appellees, )
                             )        Appeal No.
v.                           )        M1999-00171-COA-R3-CV
                             )
AYMAN AYOUB, d/b/a           )        No. 94-3189-I
LIMITED AUTO SALES,          )        Davidson Chancery
                             )
        Defendant/Appellant.  )

FILED

March 16, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE

APPEAL FROM THE CHANCERY COURT FOR DAVIDSON COUNTY

AT NASHVILLE, TENNESSEE

THE HONORABLE IRVIN H. KILCREASE, JR., CHANCELLOR

IRWIN J. KUHN
Eisenstein, Moses & Mossman
Suite 500, One Church Street
Nashville, Tennessee 37201
        ATTORNEY FOR PLAINTIFFS/APPELLEES

JOHN C. HESS
105 Bonnabrook Drive, Suite 105
Hermitage, Tennessee 37076
        ATTORNEY FOR DEFENDANT/APPELLANT

AFFIRMED AND REMANDED

WILLIAM B. CAIN, JUDGE

# O P I N I O N

This is an appeal from the chancellor's denial of Defendant's motion to alter or amend findings of fact. The question to be answered is whether the "newly discovered evidence rule" would allow the presentation post-trial of evidence which the proponent concedes he could have produced at trial. The defendant contends that evidence which tends to show misrepresentation on the part of a nonmovant should be allowed under a motion pursuant to Tenn. R. Civ. P. 52, 59 and 60 regardless of whether it was discoverable at trial. Under the circumstances of the case at bar, we cannot agree.

## I. FACTS PRESENTED AT TRIAL

The chancellor below was presented with two strongly conflicting versions of the same core transaction. The parties in this dispute were three of the four primary characters involved in that transaction. The defendant, Ayman Ayoub, operates a used car dealership. The plaintiffs, Ahmad Ben Nama and Khaled Abed are similarly engaged.[1] The transactions center around one 1995 Crown Victoria, and one 1994 Chevrolet Caprice.[2]

### A. THE PLAINTIFFS' VERSION

According to the plaintiffs Mohamad Fayssal Al Sakati (Al Sakati) arranged a meeting between them and Mr. Ayoub at Ayoub's place of business, Limited Auto Sales. At this meeting Mr. Ayoub agreed to sell and deliver good title to the aforementioned vehicles to the plaintiffs. They allege that Mr. Ayoub failed to deliver good title to the Chevrolet Caprice and failed to physically deliver the Ford.

---

[1] The plaintiff Nama is a friend of Abed, who apparently bankrolled the purchase at issue. Pursuant to an indemnification agreement. Mr. Abed carried on the suit below on Mr. Nama's behalf. Thus Mr. Nama did not participate at trial. Mr. Abed was the only party to testify in the plaintiffs' case in chief.

[2] According to the record, Mr. Abed testified to a third car which allegedly served as partial consideration for the Chevrolet and the Ford. The record presents contradicting testimony as to the actual model and make of the car. Since the chancellor's order does not address this discrepancy, and no resolution is necessary to our disposition in this case, reference is made for the purpose of clarifying the chaotic nature of the business transactions alleged.

According to the plaintiffs, the consideration for the sale originally took the form of a personal check in the amount of $21,000 made out to Ayman Ayoub. The plaintiffs alleged that during the bargaining process but after the drawing of the check, the defendant, Ayoub, offered to buy a 1986 Brougham from the plaintiffs. The sales were consolidated and the original check was replaced with a cashier's check in the amount of $19,000 payable to Mr. Ayoub. According to the plaintiffs, since the Brougham was valued by the parties at $2,800, Mr. Ayoub promised to make up the $800 difference some time in the future.

In support of their version of the facts and in addition to the testimony of Mr. Abed, the plaintiffs produced copies of the personal check in the amount of $21,000 and cashier's check in the amount of $19,000 as well as a facsimile of the title to the alleged undelivered 1995 Ford Crown Victoria.[3] This facsimile, bearing a legend date of September 15, 1998, was sent from Safeway Industries to Mr. Abed's place of business, United Auto Sales. This copy showed the last endorsement to be in blank by Ayoub's business, Limited Auto Sales. Plaintiffs offered this exhibit specifically for the purpose of showing that Mr. Ayoub shipped the Ford in question to Kuwait rather than delivering it to Mr. Abed.

B. DEFENDANT'S VERSION

Mr. Ayoub, for his part, denied that any of the transactions involved him. In spite of the checks bearing his signature and name as payee, and in spite of the existence of the endorsement on the fax copy of the title, Mr. Ayoub continued to assert at trial that Mr. Al Sakati bargained with the plaintiffs on his own. Mr. Ayoub testified at trial that the someone must have forged his name on the checks. In addition, he asserted that the title copy could have been incomplete, in that a title extension could have been appended onto the original title. Mr. Al Sakati testified apparently in support of Mr. Ayoub's version, however that testimony seemed to raise as many questions as it answered. Mr.

---

[3]It should be noted that both the checks and the facsimile title were entered into evidence without contemporaneous objection by defendant. Defendant later attempted to object to the admission of the checks, however that objection was overruled as untimely.

Al Sakati testified that he repossessed the Chevy Caprice for nonpayment. Mr. Ayoub's theory at trial was that the checks presented by the plaintiffs concerned an agreement between the plaintiffs and Mr. Al Sakati. Mr. Al Sakati then gave Mr. Ayoub the $21,000 check to deposit. Thus Mr. Al Sakati's testimony posed at least as many questions as it answered.

## II. THE FACTUAL FINDINGS

This case was tried to the court without a jury. The chancellor, after exercising his opportunity to examine the credibility of the of the witnesses, entered the findings of fact. These findings, which come to us with a presumption of correctness on appeal absent a showing that they are against the weight of the evidence, endorsed the plaintiffs' version of the facts recounted above. After entry of the court's judgment, Mr. Ayoub moved the court under Tennessee Rules of Civil Procedure 52, 59 and 60.02 to amend the factual findings, to enter additional findings, or in the alternative for a new trial. In this motion, Defendant alleged that the personal check in the amount to of $21,000 admitted at trial, as well as the facsimile copy of the Ford Crown Victoria title were forged, and that the plaintiffs thereby were attempting to defraud the court. The total proof presented with the motion contained only various additional documents (with affidavits from their custodians) which appear to contradict evidence which was presented at trial. There were no allegations at trial or on appeal that Plaintiffs prevented Defendant from discovering these documents, nor does he assert that this evidence could not be obtained at trial.

The relief sought by motions such as the one at issue is extraordinary for the very reason that a trial has already been conducted. The opportunity to present proof has passed. A judgment has been rendered and may indeed be final but for the consideration of the motion. Rule 60.02 has been described as an "escape valve" used by an unsuccessful party in an effort to avoid the finality of an incorrect or "unfair" judgment which should not easily be opened. *See Toney v. Mueller Co.,* 810 S.W.2d 145, 146 (Tenn. 1991) (quoting *Thompson v. Firemen's Fund Ins. Co.,* 798 S.W.2d 235, 238 (Tenn.1990)).

4

The burden upon a party seeking relief is clear. As this Court has clearly stated:

> Tenn.R.Civ.P. 60.02 itself strikes a balance between the competing desires for finality and for correctness. *Jerkins v. McKinney,* 533 S.W.2d 275, 280 (Tenn.1976); C.Wright & A.Miller, *Federal Practice and Procedure* Sec. 2857 (1973). Tenn.R.Civ.P. 60.02(2) specifically provides that otherwise final judgments tainted by fraud, misrepresentation, or other misconduct may be set aside within one year after their entry. Judges need not balance finality and correctness when a timely Tenn.R.Civ.P. 60.02(2) motion is filed. If the motion is substantiated, they should unhesitatingly set the tainted judgment aside.
>
> The party seeking relief under Tenn.R.Civ.P. 60.02(2) has the burden of proof. *Trice v. Moyers,* 561 S.W.2d 153, 156 (Tenn.1978); *Holt v. Holt,* 751 S.W.2d 426, 428 (Tenn. Ct. App.1988). In order to succeed, the moving party must describe the basis for relief with specificity, *Hopkins v. Hopkins,* 572 S.W.2d 639, 640 (Tenn.1978), and must show by clear and convincing evidence that post-judgment relief is warranted.
>
> * * *
>
> Accordingly, post-judgment relief is warranted when the moving party proves with clear and convincing evidence the existence of conduct amounting to
>
>> an intentional contrivance by a party to keep complainant and the Court in ignorance of the real facts touching the matters in litigation, whereby a wrong conclusion was reached, and positive wrong done to the complainant's rights.
>
> *Leeson v. Chernau,* 734 S.W.2d 634, 638 (Tenn.Ct.App.1987). Both withholding evidence and the knowing use of perjured testimony can provide grounds for granting post-judgment relief pursuant to Tenn.R.Civ.P. 60.02(2).

*Duncan v. Duncan,* 789 S.W.2d 557, 563 (Tenn. Ct. App. 1990) (footnote and some citations omitted).

Defendant presented no evidence in the record that Abed and Nama prevented him from discovering the "real facts" at issue.

III.     CONCLUSION

> Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court.   Unless the evidence preponderates against the findings, we must affirm absent error of law.  T.R.A.P. 13(d).
>
> The chancellor was faced with conflicting testimony from Taylor on the one hand and Kovsky on the other.  As the trier of fact, the chancellor had the opportunity to observe the manner and demeanor of the witnesses as they testified.  The weight, faith, and credit to be given to a witness's testimony lies in the first instance with the chancellor as the trier of fact, and the credibility accorded will be given great weight by the appellate court.  *Mays v. Brighton Bank*, 832 S.W.2d 347, 352 (Tenn.App.1992); *Sisk v. Valley Forge Ins. Co.*, 640 S.W.2d 844, 849 (Tenn.App.1982).

*Taylor v. Trans Aero Corp.*, 924 S.W.2d 109, 112 (Tenn. Ct. App. 1995).

The evidence in this case does not preponderate against the findings of fact of the chancellor.

What is offered in this case as "newly discovered evidence" does not meet the criteria for granting a new trial on this grounds.  It is conceded by appellant that the documentation offered in the motion for a new trial could have been discovered before trial by the exercise of reasonable diligence.  The action of the chancellor in overruling the motion to alter or amend findings of fact and the motion for a new trial is affirmed.  *Seay v. City of Knoxville*, 654 S.W.2d 397, 399 (Tenn. Ct. App. 1983); *Monday v. Millsaps*, 264 S.W.2d 6 (Tenn. App. 1954); *Tipton v. Smith*, 593 S.W.2d 298 (Tenn. Ct. App. 1979).

The judgment of the chancellor is in all respects affirmed and the case is remanded to the Chancery Court of Davidson County for such further proceedings as may be necessary.  Costs of the appeal are taxed against Defendant, Ayman Ayoub.

_____
WILLIAM B. CAIN, JUDGE

6

CONCUR:

_____
BEN H. CANTRELL, P.J., M.S.


_____
WILLIAM C. KOCH, JR., JUDGE